UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MILLIE AMELIA NEAL,

Plaintiff,

v.

7:11-CV-0297 (TJM/GHL)

PAMELIA ANN NEAL,
CITY OF OGDENSBURG POLICE DEPARTMENT,
OFFICER BOUCHARD, OFFICER WESLOTT,
OFFICER LA CLAIRE, and OFFICER SLATER,

Defendants.

APPEARANCES

MILLIE AMELIA NEAL
Plaintiff *pro se*
P.O. Box 58
Birmingham, MI 48012

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

Presently before the Court is a *pro se* amended complaint filed by Plaintiff Millie Amelia Neal. (Dkt. No. 10.) For the reasons discussed below, I recommend that the Court dismiss the amended complaint without leave to amend.

## I. PROCEDURAL HISTORY

Plaintiff filed her original complaint on March 17, 2011. (Dkt. No. 1.) In that complaint, she made allegations about events occurring in *September* 2011. On May 18, 2011, I recommended that the complaint be dismissed with leave to amend because, due to the date discrepancy, the allegations were factually impossible. (Dkt. No. 7 at 2.) Before Judge McAvoy could act on the Report-Recommendation, Plaintiff filed an amended complaint. (Dkt. No. 10.) On September 29, 2011, Judge McAvoy referred the amended complaint to me for review. (Dkt. No. 11.)

## II. SUMMARY OF THE AMENDED COMPLAINT

The amended complaint alleges as follows:

Plaintiff's mother resided in Ogdensburg, New York. (Dkt. No. 10 ¶ 21.) Plaintiff alleges that her mother had "life ownership of the house" and that upon her passing "house ownership would be transferred" to Plaintiff's two surviving brothers. *Id*. Plaintiff's sister, Defendant Pamelia Ann Neal, "resided in the house . . . for over [ten] years, as a tenant." *Id*. ¶ 22.

Plaintiff alleges that on September 2, 2010, she attempted to visit her mother at the Albany Medical Center. *Id.* ¶ 46. When hospital staff told her that her mother did not want to see her, Plaintiff "had to threaten the hospital with a lawsuit in order to gain access to her dying Mother who had tearfully expressly requested for Plaintiff to come see her at the hospital the previous day." *Id*. During that visit, Plaintiff learned that her mother had been "anxious to see her" and that it was her siblings - especially Defendant Neal - who "had been attempting to prevent the Plaintiff from" seeing her mother. *Id*. ¶ 47. During the visit, Plaintiff learned that she and her mother had been estranged for fifteen years because of "a lie that Defendant Pam Neal had contrived in 1995 in a criminal complaint." *Id*. ¶ 48.

Plaintiff's mother died on September 11, 2010. *Id*. ¶ 19. Plaintiff alleges that Defendant Neal agreed that day to allow Plaintiff and her daughter to pay $20 per night to stay at the family home in Ogdensburg for the funeral and family reunion. *Id*. ¶¶ 23-25. However, Defendant Neal refused to honor the agreement and "demanded that Plaintiff and her daughter [ ] stay at a hotel" when they arrived in Ogdensburg on September 12, 2010. *Id*. ¶ 26. As a result, Plaintiff incurred expenses for a one-night hotel stay at the Grand View hotel and "approximately [three] nights hotel expense at an additional, less expensive area motel." *Id*. ¶ 29.

On September 13, 2010, Defendant Neal asked Plaintiff to return to the family home for wake

preparations. *Id.* ¶ 30. However, when Plaintiff arrived she "was barred from entry and riddled with insults, mockery, and more breach of agreement . . . ." *Id.* Plaintiff was allowed entry to the house after additional discussion with other siblings. *Id.* ¶ 31. At that point "it was confirmed that Defendant Pam Neal had no legal rights" to the family home and did not have any authority to bar Plaintiff from entering the home. *Id.*

On September 14, 2010, Plaintiff was instructed to return to the family home to meet with her siblings before attending her mother's wake. *Id.* ¶ 32. She was informed that the will was scheduled to be read the next day. *Id.*

On September 15, 2010, Plaintiff was instructed to return to the family home to meet her siblings and to be escorted by limousine to her mother's funeral and burial service. *Id.* ¶ 33. The plan was that the family would attend the services and the reception and then return to the family home. *Id.* ¶ 34. Things went as planned and Plaintiff returned to the family home after the services and "peaceably entered." *Id.* ¶ 35. "At about 6:30 p.m., Defendant Pam Neal suddenly insisted that Plaintiff leave the house" because "she was just sick of seeing her . . . ." *Id.* ¶ 36. Plaintiff "asked to be left alone as this would be the last time she would be visiting that house . . . and would be leaving after getting information about attending the reading of their Mother's will." *Id.* ¶ 37. When Plaintiff said that she wanted to be present for the reading, Defendant Neal yelled "Now, just leave, now!" *Id.* ¶ 38.

Plaintiff refused to leave. *Id.* ¶ 39. Defendant Neal conferred with three other members of the family. *Id.* Moments later, Plaintiff was "informed they were going to call the police to have Plaintiff arrested if she would not leave the house immediately." *Id.*

The police arrived at approximately 6:45 p.m. *Id.* ¶ 41. Defendant Officers Bouchard, Westlott, LaClaire, and Slater entered the house and demanded that Plaintiff leave immediately or be arrested and

charged with trespassing. *Id*. ¶¶ 15, 41. Plaintiff explained the situation to Defendants Bouchard and Westlott. *Id*. ¶¶ 42-43. Despite being "informed that Defendant Pam Neal and the other siblings had no legal authority to the house and no legal right or jurisdiction to threaten arrest of their sibling for not leaving the house upon command," the officers "ignored the rights of the Plaintiff to . . . be present at the Dearly Departed's house and ordered Plaintiff to leave or be arrested." *Id*. ¶ 43.

Plaintiff left the house. *Id*. ¶ 44. Defendant LaClaire, who was on the front porch, told Plaintiff that she would be arrested if she did not hurry up and leave. *Id*.

Plaintiff alleges that "Defendant Pam Neal did so deliberately plan to deprive her sister . . . of the right to be present and aware of the reading of the Dearly Departed's Last Will and Testament and it is further believed that said Defendant co-conspired with the other siblings to deprive the Plaintiff of her rightful previously inherited property that was being held on the premises . . ." *Id*. ¶ 45.

Plaintiff alleges that Defendants violated her rights under 42 U.S.C. §§ 1983 and 1986 to free speech and assembly, conspired to violate those same rights in violation of 42 U.S.C. §§ 1983, 1985(3), and 1986, violated 18 U.S.C. § 242, and committed the state law torts of intentional infliction of emotional distress and negligent infliction of emotional distress. *Id*. at 9-17.

## III. ANALYSIS

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se*

complaint before the adverse party has been served and the parties have had an opportunity to respond. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**A. Claim Under 18 U.S.C. § 242**

Plaintiff alleges that Defendants violated 18 U.S.C. § 242. (Dkt. No. 10 at 13-15.) 18 U.S.C. § 242 is a criminal statute that does not create a private right of action. *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 90 (W.D.N.Y. 2009) (citations omitted). Thus, Plaintiff lacks standing to maintain a cause of action under 18 U.S.C. §242.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Here, the problem with Plaintiff's 18 U.S.C. § 242 claim is substantive and better pleading will not cure it. Therefore, I recommend that the Court dismiss Plaintiff's 18 U.S.C. § 242 claim without leave to amend.

**B. 42 U.S.C. § 1983 Claims Against Defendant Neal**

Plaintiff alleges that Defendant Neal violated her rights under 42 U.S.C. § 1983. (Dkt. No. 10 at 9.) 42 U.S.C. § 1983 permits a person to recover damages from another who has deprived her of her constitutional rights "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." It is the duty of the plaintiff to allege state action on the part of the defendants named in a complaint, and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Carollo-Gardner v. Diners Club*, 628 F. Supp. 1253, 1256-57 (E.D.N.Y. 1986)

(dismissing as frivolous *pro se* complaint where plaintiff failed to allege state action on part of defendants) (citations omitted); *see also DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds* 520 F.2d 409 (2d Cir. 1975).

Defendant Neal is a private actor. Private actors can be liable under § 1983 pursuant to the "joint action" doctrine, under which "a private actor can be found to act under color of state law for § 1983 purposes if the private party is a willful participant in a joint action with the State or its agents." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (S.D.N.Y. 2011) (citation and punctuation omitted). However, "[t]he provision of information to, or the summoning of, police officers is not sufficient to constitute joint action with state actors for purposes of § 1983, even if the information provided is false or results in the officers taking affirmative action." *Id.* (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) ("[A] private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor . . .."). Here, Plaintiff alleges only that Defendant Neal summoned the police to remove Plaintiff from her mother's home. This fact does not plausibly suggest that Defendant Neal engaged in joint action with state actors. Further, better pleading could not cure this defect. Therefore, I recommend that the § 1983 claims against Defendant Neal be dismissed without leave to amend.

### C. § 1983 Free Speech Claim

Plaintiff alleges that Defendant Officers Bouchard, Westlott, LaClaire, and Slater violated her right to freedom of speech when they told her she would be arrested if she did not leave her mother's home. (Dkt. No. 10 at 9-10.) This allegation fails to state a claim.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." This provision has been incorporated to the states (*Gitlow v. New York*, 268 U.S. 652 (1925)) and to their political subdivisions (*Lovell v. City of Griffin*, 303 U.S. 444 (1938)) through the Fourteenth Amendment. Although the First Amendment protects speech from government interference in public and quasi-public forums[1] and in one's own home,[2] there is no First Amendment right to speech in the private home of another person.[3] Here, Plaintiff alleges merely that she was prevented from speaking in the private home of another person. Therefore, I recommend that the Court dismiss Plaintiff's free speech claim without leave to amend.

**D. 42 U.S.C. § 1983 Free Association Claim**

Plaintiff alleges that Defendant Officers Bouchard, Westlott, LaClaire, and Slater "did wrongfully disrupt, chill, punish, 'neutralize' and otherwise infringe upon the lawful, protected activities of the Plaintiff on behalf of challenging her right to freedom of . . . association." (Dkt. No. 10 at 9-10.)

"The freedom of association guaranteed by the First Amendment does not comprise the freedom to associate in any location of one's choice." *Schuloff v. Fields*, 950 F. Supp. 66, 68 (E.D.N.Y. 1997).

---

1 *See Christian Legal Soc. v. Martinez*, ___ U.S. ___, 130 S.Ct 2971, 2984 n.11 (2010) (summarizing legal standards).

2 *See Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) ("A special respect for individual liberty in the home has long been part of our culture and our law; that principle has special resonance when the government seeks to constrain a person's ability to *speak* there.") (citations omitted, emphasis in original).

3 It is irrelevant for the purposes of this matter who, exactly, held title to the family home because Plaintiff admits that she had no claim to the house. (Dkt. No. 10 ¶ 21.) Plaintiff admits that Defendant Neal, who asked Plaintiff to leave, had been a tenant in the house for over ten years. *Id.*

The Court can find no authority holding that individuals have a free association right to remain in the private home of another person when asked to leave by that person. Therefore, I recommend that the Court dismiss Plaintiff's freedom of association claim without leave to amend.

**E. 42 U.S.C. § 1983 Conspiracy Claim**

Plaintiff alleges that Defendants conspired to deprive her of her right to free speech and free association in violation of 42 U.S.C. § 1983. (Dkt. No. 10 at 11-12.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). Here, as discussed above, Plaintiff has not alleged facts plausibly suggesting that Defendants inflicted any unconstitutional injury on her. Therefore, I recommend that the Court dismiss the § 1983 conspiracy claim without leave to amend.

**F. 42 U.S.C. § 1985(3) Claim**

Plaintiff claims that Defendants violated 42 U.S.C. § 1985(3) by conspiring to deprive her of her civil rights. (Dkt. No. 10 at 12-13.) "To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)

The complaint fails to state a § 1985(3) claim for two reasons. First, Plaintiff does not allege facts plausibly suggesting that Defendants deprived her of equal protection or equal privileges and immunities. "Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their

rights under the United States Constitution." *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 587 (2d Cir. 1988). In *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979), Justices Powell and Stevens issued concurrences stating that § 1985(3) provides a cause of action *only* when a "federal right" or a "fundamental right[] derived from the Constitution" is violated. *Novotny*, 442 U.S. at 376, 379. District courts in the Second Circuit have cited *Novotny* for the proposition that § 1985(3) "creates no substantive rights, but, instead, provides a remedy for the deprivation of rights guaranteed by *the United States Constitution*." *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 515 (E.D.N.Y. 2010); *Bibeau v. Soden*, No. 8:08-CV-0671 (LEK/RFT), 2009 WL 701918, at *8 (N.D.N.Y. Mar. 13, 2009) ("if there is no underlying *constitutional* violation, there can be neither a §§ 1983 or 1985 cause of action for conspiracy") (emphasis added)[4]; *Vertical Broadcasting, Inc. v. Town of Southhampton*, 84 F. Supp. 2d 379 (E.D.N.Y. 2000).[5] Here, as discussed above, Plaintiff has not alleged any facts plausibly suggesting that she was deprived of any constitutional or federal right. Therefore, she has not stated a § 1985(3) conspiracy claim.

The complaint fails to state a § 1985(3) claim for a second reason. To state a claim under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiff does not allege that Defendants discriminated against her on the basis of race or because of her membership in any class. The defects with Plaintiff's § 1985(3) claim cannot be cured by better

---

4 The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

5 The Second Circuit has considered, but declined to decide, whether § 1985(3) provides a remedy for private conspiracies to violate *state* law. *Katz v. Klehammer*, 902 F.2d 204, 208 (2d Cir. 1990); *Traggis*, 851 F.2d at 586-91.

pleading. Therefore, I recommend that the Court dismiss the 42 U.S.C. § 1985(3) claim without leave to amend.

**G. 42 U.S.C. § 1986 Claim**

Plaintiff alleges that Defendants violated her rights under 42 U.S.C. § 1986. (Dkt. No. 10 at 9-12.) "Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). Here, as discussed above, Plaintiff has not pleaded a viable cause of action under § 1985. Accordingly, Plaintiff has not stated a claim under § 1986. Therefore, I recommend that the Court dismiss Plaintiff's § 1986 claim without leave to amend.

**H. State Law Claims**

Plaintiff claims that Defendants committed the state-law torts of intentional infliction of emotional distress and negligent infliction of emotional distress. (Dkt. No. 10 at 15-17.) Because I recommend dismissing all of the federal claims against each Defendant, I recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. § 28 U.S.C. § 1367(c)(3); *Ciambriello v. C'nty of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (vacating dismissal of state-law claims against a defendant where § 1983 claim remained against other defendants).

**WHEREFORE**, it is hereby

**RECOMMENDED** that the Court dismiss Plaintiff's amended complaint (Dkt. No. 10) without leave to amend; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on Plaintiff by regular and certified mail; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Bibeau v. Soden*, No. 8:08-CV-0671

(LEK/RFT), 2009 WL 701918 (N.D.N.Y. Mar. 13, 2009) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 15, 2011
Syracuse, New York

George H. Lowe
United States Magistrate Judge